O

# United States District Court
# Central District of California

| | |
|---|---|
| TEMPUR SEALY INTERNATIONAL, INC. et al., | Case № 2:22-cv-06194-ODW (PVCx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [22]** |
| SELTYK MATTRESS INC., | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiffs Tempur Sealy International, Inc.; Tempur-Pedic Management, LLC; Tempur-Pedic North America, LLC; Tempur World, LLC; Dan-Foam APS; and Sealy Technology LLC ("Tempur Sealy") move for entry of default judgment against Defendant Seltyk Mattress Inc., on Tempur Sealy's Complaint for trademark infringement and counterfeiting. (Mot. Default J. ("Motion" or "Mot."), ECF No. 22.) For the reasons that follow, the Court **GRANTS** Tempur Sealy's Motion.

## II.   BACKGROUND

Tempur Sealy develops, manufactures, supplies, and sells premium mattresses, pillows, and other comfort products ("Tempur Sealy Products") bearing trademarks owned by Tempur Sealy ("Tempur Sealy Marks").  (Compl. ¶¶ 12–18, ECF No. 1.)

Some of the Tempur Sealy Marks are word marks, like "TEMPUR-PEDIC," "POSTUREPEDIC," and "POSTUROPEDICO," and other Marks are designs like the Stearns & Foster fleur-de-lis.  (*Id.* ¶¶ 16–19.)  Each year, Tempur Sealy spends millions of dollars advertising and promoting its products to establish the Tempur Sealy Marks in the minds of customers as synonymous with a source of high-quality bedding products.  (*Id.* ¶ 20.)  Tempur Sealy tightly controls authorized sales of Tempur Sealy Products to ensure this high quality and reputation.  (*Id.* ¶¶ 25, 33, 35.)

Seltyk is not an authorized retail dealer of Tempur Sealy Products.  (*Id.* ¶ 37.) In March 2022, Tempur Sealy learned that Seltyk was using the Tempur Sealy Marks online and on exterior signage at Seltyk's retail location in Los Angeles, to advertise and sell Seltyk's mattress products.  (*Id.* ¶¶ 38–39.)  Tempur Sealy also learned that Seltyk was selling goods with "TEMPUR-PEDIC" and "POSTURE-O-PEDIC" word marks and the fleur-de-lis design, each of which is identical or similar to Tempur Sealy Marks.  (*Id.* ¶¶ 39–40.)

In March and May 2022, counsel for Tempur Sealy contacted Seltyk, notifying it of Tempur Sealy's objections and demanding that Seltyk cease and desist advertising and selling the infringing and counterfeit goods.  (*Id.* ¶¶ 42–43.)  After receiving these cease-and-desist letters, Seltyk continued the unauthorized advertising and sales.  (*Id.* ¶¶ 44, 48; Decl. Mark Riera iso Mot. ("Riera Decl.") ¶ 16, Ex. E Image 2 (October 23, 2022 Seltyk Instagram post displaying Seltyk mattress with Tempur Sealy Marks), ECF No. 22-1.)

On August 31, 2022, Tempur Sealy filed this action against Seltyk, asserting federal and California state law claims for trademark infringement, trademark counterfeiting, unfair competition, false advertising, and trademark dilution.  (Compl. ¶¶ 57–97.)  Tempur Sealy served Seltyk with the Complaint, but Seltyk did not timely respond.  (Proof of Service, ECF No. 14; Order Show Cause ("OSC") Default, ECF No. 18.)  Instead, counsel claiming to represent Seltyk contacted Tempur Sealy, acknowledged the Summons and Complaint, and requested an extension of time to

respond.  (Riera Decl. ¶¶ 12–13, 22.)  Tempur Sealy offered a 30-day extension.  (*Id.* ¶ 14.)  Seltyk's purported counsel did not reply to that offer.  (*Id.* ¶¶ 15, 20.)

After Seltyk's time to respond to the Complaint elapsed, Tempur Sealy requested entry of Seltyk's default.  (Req. Default, ECF No. 19.)  The Clerk entered Seltyk's default, and on November 17, 2022, Tempur Sealy filed this Motion. (Default, ECF No. 20; Mot.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a).  However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rule 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2.  Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  The court need not make detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV.   DISCUSSION

Tempur Sealy satisfies the procedural requirements for default judgment and establishes that entry of default judgment against Seltyk is substantively appropriate.

**A.   PROCEDURAL REQUIREMENTS**

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2).   In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Tempur Sealy meets these requirements.   On October 27, 2022, the Clerk entered default against Seltyk as to Tempur Sealy's Complaint.   (*See* Default.) Tempur Sealy's counsel submits declaration testimony that Seltyk is not an infant or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Riera Decl. ¶ 27.)  Finally, Seltyk has not appeared in this case, so written notice of the Motion was not required.   Nevertheless, Tempur Sealy served notice of this Motion on Seltyk's registered agent and also on Seltyk's purported counsel, in accordance with Rule 55(b)(2).   (*Id.*)   Thus, Tempur Sealy satisfies the procedural requirements.

**B.   *EITEL* FACTORS**

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  Accordingly, the Court considers these two factors first.

1        *1.*      *Second & Third Eitel Factors*

2        The second and third *Eitel* factors require a plaintiff to "state a claim on which

3 the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original).

4 Although well-pleaded allegations are taken as true, "claims which are legally

5 insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*,

6 980 F.2d 1261, 1267 (9th Cir. 1992).

7        Tempur Sealy raises six claims under federal and California law, for trademark

8 infringement, trademark counterfeiting, trademark dilution, unfair competition, and

9 false advertising. These claims are all subject to the "same legal standards." *Rearden*

10 *LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *Cleary v. News*

11 *Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994); *Phillip Morris USA Inc. v. Shalabi*,

12 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004); *Alixir Co. v. Qué Onda Beverage, Inc.*,

13 No. 2:20-cv-08368-RGK (RAOx), 2021 WL 971057, at *6 (C.D. Cal. Jan. 6, 2021).

14 The Court therefore analyzes them together for the purposes of this Motion as a

15 Lanham Act trademark infringement claim.

16        To state a claim for trademark infringement under the Lanham Act, a plaintiff

17 must allege "(1) that it has a protectible ownership interest in the mark; and (2) that

18 the defendant's use of the mark is likely to cause consumer confusion." *Dep't of*

19 *Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

20        A plaintiff may establish a protectible ownership interest in a mark through

21 registration, which constitutes prima facie evidence of (1) the validity of the mark,

22 (2) the registrant's ownership of the mark, and (3) the right to the mark's exclusive

23 use. 15 U.S.C. § 1115(a). Here, Tempur Sealy alleges that it has a protectable

24 ownership interest in its Tempur Sealy Marks and submits registration numbers and

25 trademark records for its protected Marks. (*See* Compl. ¶¶ 12–19; Exs. A–B

26 ("Trademark Registrations"), ECF No. 3.) Accordingly, Tempur Sealy sufficiently

27 alleges and establishes that it has a protectible ownership interest in the Tempur Sealy

28 Marks.

Likelihood of confusion is a factual determination, normally assessed through multiple factors, but "in cases involving counterfeit marks," the multi-factor assessment is "unnecessary . . . because counterfeit marks are inherently confusing." *Shalabi*, 352 F. Supp. 2d at 1073. A mark is considered "counterfeit" if it is "identical with, or substantially indistinguishable from" the plaintiff's trademark, regardless of whether the defendant knew of the plaintiff's registration. 15 U.S.C. §§ 1116(d)(1)(B)(i), 1127. Here, Tempur Sealy alleges that Seltyk is using variations of Tempur Sealy's Marks that are substantially indistinguishable from Tempur Sealy's protected Marks to advertise and sell unauthorized Seltyk products, and also that Seltyk is selling counterfeit mattresses that affix and display the Tempur Sealy Marks. (Compl. ¶¶ 38–41.) Tempur Sealy submits dozens of images of Seltyk's unauthorized use of Tempur Sealy Marks on advertising and mattress products, including the word marks "TEMPUR," "TEMPUR-PEDIC," and "POSTURE-O-PEDIC," and the fleur-de-lis design. (*See id.*; Riera Decl Ex. E.) Accordingly, Tempur Sealy sufficiently alleges and establishes that Seltyk's use of the Tempur Sealy Marks is likely to cause consumer confusion.

Tempur Sealy states claims for trademark infringement and counterfeiting on which it may recover, and therefore the second and third *Eitel* factors weigh in favor of entering default judgment against Seltyk.

### 2. Remaining Eitel Factors

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Seltyk. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. Tempur Sealy would suffer prejudice absent entry of default judgment because it would have no recourse against Seltyk's continuing infringement, and no remedy for the injuries sustained from Seltyk's misconduct. Further, as discussed below in the damages analysis, the sum of money Tempur Sealy seeks is expressly authorized by statute and is one-eighth of the total amount available based on Tempur Sealy's allegations.

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of default judgment.  Tempur Sealy's allegations are accepted as true on default, and Seltyk may not now "challenge the accuracy of the allegations in the complaint."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).  Tempur Sealy has supported its claims with ample evidence and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment."  *Id.*  Further, in October 2022, counsel claiming to represent Seltyk acknowledged the Summons and Complaint and requested an extension of time to respond, yet did not reply when Tempur Sealy offered an extension.  Nor has Seltyk's purported counsel appeared in this case in the intervening five months.  Accordingly, nothing in the record suggests Seltyk's failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor.  However, because Seltyk's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default.  *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Seltyk on Tempur Sealy's claims under federal and California law, for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and false advertising.

## C.   REQUESTED RELIEF

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here, Tempur Sealy seeks a permanent injunction, statutory damages, costs of the action, and attorneys' fees. (Mot. 14–17.)  The relief Tempur Sealy seeks is consistent with the relief requested in

the Complaint.  (Compl. ¶¶ 98–108.)  However, for the following reasons, the Court awards Tempur Sealy some, but not all, of the relief it requests.

### 1.   Permanent Injunction

Tempur Sealy requests that the Court permanently enjoin Seltyk's ongoing infringement and counterfeiting.  (Mot. 14; Compl. ¶ 98.)

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting 15 U.S.C. § 1116(a)).  A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury, (2) for which a legal remedy is inadequate to compensate, (3) that the balance of hardships between the plaintiff and defendant supports an equitable remedy, and (4) the "public interest would not be disserved by a permanent injunction."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ."  *eBay*, 547 U.S. at 391.

Tempur Sealy satisfies its burden for permanent injunctive relief.  First, a plaintiff seeking an injunction to prevent trademark infringement is entitled to a rebuttable presumption of irreparable harm upon establishing a likelihood of success on the merits.  15 U.S.C. § 1116(a); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021) (discussing the "recently enacted Trademark Modernization Act of 2020").  As discussed above, Tempur Sealy's allegations and evidence establish a likelihood of success on the merits of its trademark-based claims.  Tempur Sealy is thus entitled to a presumption of irreparable harm.  15 U.S.C. § 1116(a).  In light of Seltyk's default, this presumption is conclusive.

Second, the evidence indicates that Seltyk continued to use Tempur Sealy Marks even after Tempur Sealy threatened Seltyk with suit.  Thus, absent an

injunction, Seltyk may continue to use Tempur Sealy Marks to advertise and sell infringing and counterfeit goods, and Tempur Sealy will continue to lose profits, reputation, and customer good will.  Legal remedies are inadequate to compensate for these losses.  *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) ("[T]here is no adequate remedy at law for the injury caused by a defendant's continuing infringement." (quoting *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988))).  Third, for these same reasons, the balance of hardships weighs in Tempur Sealy's favor, as the requested permanent injunction would not prevent Seltyk from conducting its business, provided the products Seltyk sells do not infringe the Tempur Sealy Marks.  *Id.* at 1084.  Finally, "[t]he public has an interest in avoiding confusion between two companies' products."  *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *Chalon Adventures, Inc. v. Fullerton Lounge, Inc.*, No. 8:18-cv-01565-JLS (ADSx), 2019 WL 2896131, at *5 (C.D. Cal. Mar. 7, 2019) (finding the public interest is damaged by a defendant's unauthorized infringing use).  Therefore, a permanent injunction would serve the public interest.

The Court thus finds it appropriate to permanently enjoin Seltyk from infringing and counterfeiting the Tempur Sealy Marks and Tempur Sealy Products, as detailed below.

### 2. *Statutory Damages*

Tempur Sealy seeks $500,000 in statutory damages, "to recover from and further deter Seltyk's unlawful actions."  (Mot. 15; Compl. ¶ 101.)

A plaintiff suing for trademark infringement is generally entitled to recover actual damages, the costs of the action, and the defendant's profits.   15 U.S.C. § 1117(a).  However, when a defendant has used a counterfeit mark, a plaintiff may elect to request statutory damages instead of actual damages.  *Id.* § 1117(c). Section 1117(c) authorizes statutory damages between $1,000 and $200,000 per counterfeit mark per type of good.  *Id.* § 1117(c)(1).  Where the use of the counterfeit

mark was willful, section 1117(c) authorizes "not more than $2,000,000 per counterfeit mark per type of good[]." *Id.* § 1117(c)(2).

In the Complaint, Tempur Sealy sought statutory damages of "at least $4,000,000" pursuant to 15 U.S.C. § 1117(c), as a result of Seltyk's use of "at least two counterfeit marks." (Compl. ¶ 101.) Through its Motion, Tempur Sealy seeks $500,000, which is one-eighth of the initial sum requested, based on evidence of Seltyk's "ongoing, willful counterfeiting" of Tempur Sealy Marks. (Mot. 15.) Tempur Sealy identifies "at least four registered Tempur Sealy Marks— TEMPUR-PEDIC, POSTUREPEDIC, POSTUR-O-PEDIC, and the . . . fleur-de-lis design [Seltyk used] on unauthorized or counterfeit Tempur Sealy Products." (*Id.*; Compl. ¶¶ 16–19 (listing registered Tempur Sealy Marks), 38–41 (alleging Seltyk's unauthorized use of certain Marks, supported by photographs).) Tempur Sealy also submits photographic evidence with its Motion demonstrating that Seltyk continued infringing Tempur Sealy's Marks and selling counterfeit Tempur Sealy Products after receiving cease-and-desist letters and the Complaint in this action. (*See* Riera Decl. Ex. E (photographs taken by Tempur Sealy's counsel and agents, of Seltyk's online posts and retail locations with advertising and goods using Tempur Sealy Marks, including as late as October 23, 2022).) This evidence establishes that Seltyk's continued use of the Tempur Sealy Marks is willful and authorizes the Court to award statutory damages up to the limits of § 1117(c)(2).

The sum Tempur Sealy seeks, $500,000, is authorized by the statute and supported by the allegations and evidence. Accordingly, the Court finds the requested sum appropriate and **AWARDS** Tempur Sealy $500,000 in statutory damages.

*3.     Attorneys' Fees & Costs*

Tempur Sealy seeks its costs and attorneys' fees for prosecuting Seltyk's unlawful actions. (Mot. 16–17; Compl. ¶¶ 106–07.)

A plaintiff that establishes a defendant's trademark infringement is entitled to recover the costs of the action. 15 U.S.C. § 1117(a). Here, Tempur Sealy seeks

$2,591.79 in costs.  (Mot. 16.)  It supports this request with declaration testimony from counsel and a breakdown of costs.  (Reira Decl. ¶ 30, Ex. H at 74–75 ($2,441.02); Decl. Amy S. Cahill ¶ 4 ($150.77), ECF No. 22-3.)  These costs are recoverable under the statute and supported by evidence.  Accordingly, the Court **AWARDS** Tempur Sealy $2,591.79 in costs.

"[T]he Lanham Act allows an award of attorneys' fees in 'exceptional cases.'" *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (citing 15 U.S.C. § 1117(a)). Such an award of attorneys' fees is permitted but not mandated. *Id.*  Whether a case is "exceptional" is determined in light of the totality of circumstances, considering several nonexclusive factors and using a preponderance of the evidence standard.  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (discussing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), and the "parallel and identical" "exceptional" standard in the Patent Act).  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* at 1180.

Tempur Sealy argues that "Seltyk's ongoing bad faith, unreasonable, and inequitable infringement of Tempur Sealy Marks and Products is exceptional," (Mot. 17), but does not explain how a defendant's continuing infringement makes a trademark infringement case "stand[] out from others," *SunEarth*, 839 F.3d at 1180. Further, other than Seltyk's failure to appear and defend, litigation in this case has been straightforward and "run-of-the-mill," *see Octane Fitness*, 572 U.S. at 554 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)), with substantive filings limited to the initial Complaint and the instant Motion.  Accordingly, Tempur Sealy fails to establish that this case is exceptional and an award of attorneys' fees is therefore not appropriate.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Tempur Sealy's Motion for Entry of Default Judgment against Seltyk for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and false advertising.  (ECF No. 22.)   The Court **AWARDS** Tempur Sealy **$500,000** in statutory damages and **$2,591.79** in costs.  The Court **DENIES** Tempur Sealy's request for attorneys' fees. The Court **PERMANENTLY ENJOINS** Seltyk and its officers, agents, affiliates, employees, attorneys, and any other persons or entities working in concert with Seltyk regarding the actions for which Seltyk is liable from:

1.   using the Tempur Sealy Marks or any other confusingly similar variants of the Tempur Sealy Marks in any manner;

2.   promoting, selling, or offering for sale any Tempur Sealy Products or any other unauthorized, counterfeit, or confusingly similar variants of the Tempur Sealy Products; and

3.   engaging in any actions or inactions likely to cause confusion in the minds of the public regarding the connection between Seltyk's business or products, on one hand, and Tempur Sealy or the Tempur Sealy Products, on the other hand.

To the extent Tempur Sealy seeks additional injunctive relief, (*see, e.g.*, Proposed Entry Default J., ECF No. 23-1), the Court finds that Tempur Sealy fails to establish additional injunction terms are appropriate.  The Court therefore **DENIES** any further injunctive relief.

**IT IS SO ORDERED.**

April 25, 2023

OTIS D. WRIGHT, II
**UNITED STATES DISTRICT JUDGE**